UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michael Scott Pickle,

      Plaintiff,

v.                                                                  Case No. 14-10208

Captain Keith McConnell,                         Sean F. Cox
                                                                     United States District Court

      Defendant.

_____/

**OPINION & ORDER**

      Plaintiff is a corrections officer who was physically assaulted by a prison inmate during

the course of transporting a prisoner into the segregation unit.   Thereafter, Plaintiff filed suit

against his supervisor, asserting a § 1983 claim and two state-law claims.  The matter was

removed to this Court based on federal-question jurisdiction over the § 1983 claim.  After

removing the matter, and in lieu of filing an answer to the Complaint, Defendant filed the instant

Motion for Summary Judgment.  Among other things, Defendant asserts that he is entitled to

qualified immunity as to the § 1983 claim asserted against him.

      The Court finds that the issues have been adequately presented in the parties' briefs and

that oral argument would not significantly aid the decisional process.  *See* Local Rule 7.1(f)(2),

U.S. District Court, Eastern District of Michigan.  The Court therefore orders that the motion

will be decided upon the briefs.   As explained below, the Court concludes that Defendant is

entitled to qualified immunity and the Court shall therefore grant summary judgment in favor of

Defendant as to Plaintiff's § 1983 claim.  In addition, given that this Court is dismissing the only

federal claim in this action at a very early stage of the litigation, this Court declines to exercise

supplemental jurisdiction over the remaining state-law claims and shall remand those claims to

the state court.

## BACKGROUND

### A.    Procedural Background

On or about December 3, 2013, Plaintiff Michael Scott Pickle ("Plaintiff") filed this

action against Defendant Captain Keith McConnell ("Defendant") in state court.  Plaintiff's

Complaint asserts the following claims against Defendant: 1) "Count I – Constitutional

Violations Against The Officers"; 2) "Count II – Intentional Tort Under MCL 418.131 And

MCL 691.1407"; and "Count III – Intentional Infliction Of Emotional Distress."

Defendant removed the matter to this Court on January 16, 2014, based on federal-

question jurisdiction over Count I.  Defendant asks the Court to exercise supplemental

jurisdiction over the two state-law claims in Plaintiff's Complaint.

No Scheduling Order has been issued yet.

On January 23, 2014, in lieu of an answer and prior to any discovery, Defendant filed a

Motion for Summary Judgment.  (Docket Entry No. 3). That motion has been fully briefed by the

parties.

### B.    Defendant's Motion For Summary Judgment Raises The Defense Of Qualified Immunity

Notably, Defendant's Motion for Summary Judgment raises the defense of qualified

immunity.  Under the doctrine of qualified immunity, governmental officials, including police

officers, are immune from civil liability unless, in the course of performing their discretionary

functions, they violate the plaintiff's clearly established constitutional rights. *Jones v. Byrnes*,

585 F.3d 971, 974 (6th Cir. 2009); *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008).

Determining whether government officials are entitled to qualified immunity generally requires

two inquiries: 1) whether, viewing the facts in the light most favorable to the plaintiff, the

plaintiff has shown that a constitutional violation occurred; and 2) whether the right was "clearly

established" at the time of the violation. *Harris v. City of Circleville,* 583 F.3d 356, 365 (6th Cir.

2009). The Court is free to consider those inquiries in whatever order it deems appropriate in the

light of the issues presented. *Jones*, 534 F.3d at 975.

"[A] qualified immunity defense can be raised at various stages of the litigation including

at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment,

or as an affirmative defense at trial." *English v. Duke*, 23 F.3d 1086, 1089 (6th Cir. 1994).

Nevertheless, the Supreme Court has reiterated that questions of qualified immunity should be

resolved at the earliest possible stage in the litigation or the "driving force" behind the immunity

– avoiding unwarranted discovery and other litigation costs – will be defeated." *Everson v. Leis*,

556 F.3d 484, 492 (6th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223).

The Sixth Circuit has held that when faced with a motion for summary judgment based

on qualified immunity, the district court cannot avoid ruling on the issue "solely because

discovery was not complete." *Summers v. Leis*, 368 F.3d 881, 886 (6th Cir. 2004). In such

circumstances, the district court should determine – prior to any further discovery – whether the

plaintiff's complaint alleges the violation of a constitutional right at all, and if so, whether that

right was clearly established at the time of the alleged violation. *Summers,* 368 F.3d at 886;

*Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002). If so, the Court should turn to

"the question of whether any facts material to [the plaintiff's] claim [are] genuinely at issue, an

3

inquiry that require[s] the court to review the motion and its supporting documents as well the plaintiff's opposition and its supporting documents." *Skousen*, 305 F.3d at 527.

"Qualified immunity is an affirmative defense, and a defendant bears the burden of pleading it in the first instance." *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). "Once the defendant raises a qualified-immunity defense, the burden shifts to the plaintiff to demonstrate" both that the challenged conduct violated a constitutional right and that the right was clearly established. *Id*. "If the plaintiff fails to establish either element, the defendant is immune from suit." *Id.*

**C.     Allegations In Plaintiff's Complaint**

On June 9, 2013, Plaintiff was employed as a Correctional Officer by the State of Michigan at the Gus Harrison Correctional Facility in Adrian, Michigan.  (Compl. at ¶ 8). Defendant is a Captain at the Gus Harrison Correctional Facility and was Plaintiff's supervisor at the time of the incident.  (Compl. at ¶ 15).

Plaintiff was assigned to work in the segregation unit at the facility.  (Compl. at ¶ 8). That unit "is a high security area with 22 separate cells" where inmates are placed "when they are unable to get along in the general population and are a risk to other inmates, themselves, or officers."  (Compl. at ¶ 9).

Prior to Plaintiff's arrival to work on June 9, 2013, a prisoner allegedly assaulted an officer and allegedly attempted to swallow a razor.  (Compl. at ¶ 10).  That prisoner was transported to a hospital for treatment and, for safety purposes, the prisoner was in belly chains and leg irons and accompanied by two corrections officers.  (Compl. at ¶ 11).

When Plaintiff arrived at work, he was informed that the prisoner was on his way back to

the facility from the hospital, but was not told of the incidents that had occurred earlier in the day involving the prisoner.  (Compl. at ¶ 14).

Upon being transferred back the facility, the prisoner was to be placed in "top of bed" restraints.  (Compl. at ¶ 17).  Defendant had over an hour to prepare for the prisoner's arrival. (Compl. at ¶ 16).

The prisoner was brought back into the segregation unit from the hospital by two escorting officers.  (Compl. at ¶ 18).  Those escorts asked Defendant if he needed assistance with the prisoner and Defendant told them they were not needed and ordered the two officers to leave stating, "we got this."  (Compl. at ¶ 19).

Defendant then brought the prisoner down the segregation hall alone, after dismissing the officers who had offered to help.  (Compl. at ¶ 20).  Plaintiff was the only other officer, aside from Defendant, present to assist in the transport of the prisoner.  Another sergeant was present and videotaping the event, per protocol.  (Compl. at ¶ 21).

Defendant entered the segregation cell with Plaintiff and instructed the prisoner to sit on the bed.  (Compl. at ¶ 22).  The Michigan Department of Corrections has an operating procedure that states "[w]henever staff are forewarned that a prisoner is . . . known to be dangerous and has threatened violence . . . body armor, protective shield, and chemical agents are available for use and are normally a forerunner to the use of force."  (Compl. at ¶ 23).  Another operating procedure, that pertains to top of the bed restraint, "requires the prisoner to be lying down on the bed and mattress and a top of the bed chain placed through the belly chain and securing the chain to the eye-bold on the bed with a lock."  (Compl. at ¶ 24).

Defendant ordered Plaintiff to remove the belly chain handcuffs from the prisoner while

5

the prisoner was sitting on the bed and Plaintiff complied with that order.  (Compl. at ¶ 25).

Plaintiff believed that Defendant would grab the prisoner's arms as he removed the handcuffs

but Defendant did not grab the prisoner's arms.  (Compl. at ¶ 26).  Defendant ordered the

prisoner to stand and remove his shirt and the prisoner did not comply.  (Compl. at ¶ 27).  The

prisoner smashed his elbow into Plaintiff's nose as hard as he could, knocking Plaintiff

unconscious.  The prisoner continued to assault Plaintiff.  (Compl. at ¶ 28).

The sergeant who had been videotaping called for assistance and Plaintiff was taken to

the hospital.  (Compl. at ¶¶ 29 & 32).  Plaintiff sustained serious injuries from the assault.

(Compl. at ¶ 33).

Plaintiff alleges that Defendant violated: 1) "OP 04.05.110, 'Use of Force,' by not

providing or using sufficient staff, although sufficient staff was available, and by not providing

body armor, protective shield, chemical agent or taser during the attempted application of the top

of the bed restraint"; and 2) "OP 04.05.112A, "Top of the Bed Restraint,' by ordering Plaintiff to

remove the prisoners restraints with the prisoner sitting, instead of lying, in the bed and by

ordering the prisoner to stand and remove his shirt.  Removing one prisoner's restraints without

taking prescribed precautions increased the danger that the prisoner would engage in assault and

battery which he in fact proceeded to do."  (Compl. at ¶¶ 30 & 31).

In Count I, Plaintiff alleges that Defendant "intentionally violated [his] constitutionally

protected rights," including his "substantive due process right to be free from state created

dangers guaranteed by the Fourth Amendment to the United States Constitution by the following

actions:

   a.    The Defendant affirmatively increased the risk that Plaintiff would be
         exposed to an act of violence by a prisoner by refusing to follow

established correctional facility protocol and by ordering Plaintiff to
remove the prisoner's restraint;

b.      The Defendant placed the Plaintiff specifically at risk, as distinguished
from a risk that affects the public at large, by exposing Plaintiff to an act
of violence by a prisoner by refusing to follow established correctional
facility protocol and by ordering Plaintiff to remove the prisoner's
restraint;

c.      The Defendant knew or should have known that his actions of refusing to
follow established correctional facility protocol specifically endangered
the Plaintiff and by order Plaintiff to remove the prisoner's restraint.

(Compl. at ¶ 39).

**D.      The Videotape Of The Incident**

In support of his Motion, Defendant submited a videotape of the incident as an exhibit.
There are actually several video segments on the tape, but only appears relevant to the motion.

In video 0260, the prisoner is seen arriving at the facility via ambulance.  He is shackled,
dressed in a prison uniform, and has a net covering his head.  He is walking with Defendant and
some others down a hall.  The prisoner is cooperative.  Defendant is heard telling others that he
and Plaintiff will handle the transport.  As they enter the cell, someone is videotaping while
Defendant and Plaintiff attempt to get the prisoner undressed.  The prisoner's restraints are
removed and the prisoner is cooperative at first.  But the prisoner then suddenly and violently
begins resisting and strikes both Defendant and Plaintiff.  A female officer is heard calling for
help and others quickly arrive and subdue the prisoner.  The female officer is heard telling the
others to get Defendant and Plaintiff out of there and that the prisoner assaulted them both.

In video 0262, Plaintiff is shown being transported on a stretcher and is taken away by an
ambulance.

7

In another video segment, there is very poor footage of what appears to be other officers attempting to secure the prisoner after Defendant and Plaintiff were assaulted and removed from the scene.

In video 0261, the prisoner is now seen in his underwear and officers are seen securing the prisoner and checking all of his restraints.

## ANALYSIS

### I.      Count I Of Plaintiff's Complaint

Count I of Plaintiff's Complaint is the only federal claim asserted by Plaintiff.  This Court will therefore analyze the challenges to Count I first because if the Court dismisses the sole federal claim in this action at this very stage (i.e., before an Answer has been filed and before discovery has even begun) then the Court should determine if it should exercise supplemental jurisdiction over the remaining state-law claims.

In challenging Count I, Defendant asserts, among other things, that he is entitled to qualified immunity as to Plaintiff's § 1983 claim.

#### A.      Defendant Is Entitled To Qualified Immunity.

In considering the pending motion, this Court should determine – prior to any discovery – whether the plaintiff's complaint alleges the violation of a constitutional right at all, and if so, whether that right was clearly established at the time of the alleged violation.  *Summers,* 368 F.3d at 886; *Skousen v. Brighton High Sch*., 305 F.3d 520, 527 (6th Cir. 2002).

Where, as here, "the defendant raises a qualified-immunity defense, the burden shifts to the plaintiff to demonstrate" both that the challenged conduct violated a constitutional right and that the right was clearly established.  *Id*.  "If the plaintiff fails to establish either element, the

defendant is immune from suit."  *T.S. v. Doe*, 742 F.3d at 635.

### 1.     Construing The Video And Allegations In The Light Most Favorable To Plaintiff, There Was No Constitutional Violation.

The parties appear to be in agreement that the standard that applies here is deliberate

indifference.  As explained below, however, it appears that the standard set forth by the

applicable case law is an even higher threshold for Plaintiff to meet.  But even if deliberate

indifference were the standard, Plaintiff has not alleged a constitutional violation given the facts

alleged here.

To prevail on a claim under § 1983, a plaintiff must establish that: 1) a person, 2) acting

under color of state law, 3) deprived him of a federal right.  *Sperle v. Michigan Dep't. of*

*Corrections*, 297 F.3d 483,490 (6th Cir. 2002).  Here, there is no question that Defendant was

acting under color of state law.  Thus, the dispute centers on whether Defendant deprived

Plaintiff of his substantive due process right to life and liberty.

In most cases, a "State's failure to protect an individual against private violence simply

does not constitute a violation of the Due Process Clause."  *DeShaney v. Winnebago Cty. Dep't.*

*of Soc. Servs*., 489 U.S. 189, 196 (1989).  This is because the"Due Process Clause Of the

Fourteenth Amendment is 'phrased as a limitation on the State's power to act, not as a guarantee

of certain minimal levels of safety and security.'"  *Ewolski v. City of Brunswick*, 287 F.3d 492,

509 (6th Cir. 2002) (citing *DeShaney v. Winnebago County Dep't of Social Servs*., 489 U.S. 189,

195 (1987)).  State officials may be subject to constitutional liability if they fail to provide

protection for individuals in state custody.  *Ewolski,* 287 F.3d at 509.  "Even in noncustodial

settings, however, state officials may violate the Due Process Clause when their affirmative

actions directly increase the vulnerability of citizens to dangers or otherwise place citizens in

2:14-cv-10208-SFC-MAR Doc # 22 Filed 06/27/14 Pg 10 of 15 Pg ID 252

harm's way." *Id*. Such claims are based upon a "state-created danger" theory. *Id.*

"Where the victim is in government custody," the "deliberate indifference" standard is

appropriate. *Hunt v. Sycamore Commty. Sch. Dist. Bd. of Educ*., 542 F.3d 529, 536 (6th Cir.

2008). This is because the "victim's dependence on the state, his inability to provide for his own

needs, and the involuntariness of his situation require the government to take care of the

prisoner." *Id*.

"On the other hand, cases in which the plaintiff is a government employee suing for

injuries received in the line of duty present the opposite situation in terms of voluntariness of the

relation; therefore, such claims are particularly unlikely to succeed." *Hunt*, 542 F.3d at 536.

This is because "[f]ailure to provide a safe working environment is not 'conscience-shocking, in

a constitutional sense,'" because it is not "arbitrary." *Id*. The Sixth Circuit has explained:

> While it has not proved impossible for government employees to establish
> arbitrariness of their employer, such claims have, for the most part, not succeeded
> in this Circuit. In a state-created danger case in which public employees
> prevailed against their employer, we determined that police had a due process
> claim against the City for endangering them by releasing information that would
> make it easier for third persons to harm them. *Kallstrom v., City of Columbus*,
> 136 F.3d 1055, 1067 (6th Cir. 1998). In contrast, in other cases in which the harm
> to a government employee was inflicted by third persons, we have held that there
> was no state-created danger. In *Nobles v. Brown*, 985 F.2d 235 (6th Cir. 1992),
> we held that a government employee could not recover when hurt by a third
> person in the line of duty. In *Nobles*, a prison guard was taken captive and raped
> by a prisoner. We noted that the defendant officials were "charged with having
> played a part in creating the dangers faced by the plaintiff," and so *Nobles* was
> distinguishable from *DeShaney. Id*. at 237. Nevertheless, the court held that the
> guard's rights had not been violated because it was not the government officials,
> but a prisoner who raped the guard. *Id*. at 238. We quoted *Walker v. Rowe*, 791
> F.2d 507, 511 n.2 (7th Cir. 1986), which said that "even deliberate exposure of
> public employees to high risk does not violate the constitution because it is not an
> abuse of government power." *Nobles,* 985 F.2d at 238 (internal quotation marks
> omitted). *Accord Sperle v. Mich. Dep't of Corr*., 297 F.3d 483, 494 (6th Cir.

10

2002); *see also Hayes v. Vessey*, 777 F.2d 1149, 1152 (6th Cir. 1985) (claim by prison teacher against prison officials based on rape by inmate failed for lack of "intentional governmental act.").

*Hunt*, 542 F.3d at 537.

The Sixth Circuit went on to explain that "the distinction between custodial settings and voluntary relationships such as employment" is the "determining factor in setting the culpability level for a substantive due process claim." *Hunt, supra*, at 538. The court stated "[t]his court made clear in *Lewellen v. Metropolitan Government of Nashville and Davidson County, Tenn.*, 34 F.3d 345 (6th Cir. 1994), that in a non-custodial setting, in order to establish liability for violations of substantive due process under § 1983, a plaintiff must prove that the governmental actor either intentionally injured the plaintiff or acted arbitrarily in the constitutional sense." *Id.* The *Hunt* Court stated:

> We believe the more exact standard, announced in *Lewellen*, is that *in order to succeed on a § 1983 claim in a non-custodial setting, a plaintiff must prove either intentional injury or* "arbitrary conduct intentionally designed to punish someone – e.g., giving a worker a particularly dangerous assignment in retaliation for a political speech . . . or because of his or her gender."

*Id.* at 538 (emphasis in original).

Accordingly, the Sixth Circuit has noted in several published decisions that "[t]he *Lewellen* court expressed doubt as to whether, in a non-custodial case, 'deliberate indifference' could give rise to a violation of substantive due process" and that the more exacting standard applies in such cases. *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 453 (6th Cir. 2002); *Hunt, supra*.

Here, Plaintiff's complaint does not allege facts that come close to meeting this high standard. Indeed, even if the Court were to apply the lesser, but still difficult-to-meet, standard

11

of deliberate indifference, Defendant would still be entitled to qualified immunity.  The facts

alleged in Plaintiff's complaint amount to, at best, a case sounding in negligence and not a

constitutional violation under § 1983.  Defendant is entitled to qualified immunity as to Count I

of Plaintiff's Complaint because Plaintiff not alleged a constitutional violation.

### 2.        The "Clearly Established" Prong Is Also Not Met.

Even if Plaintiff's Complaint alleged a constitutional violation, which it does not,

Plaintiff cannot meet the clearly established prong of the qualified immunity test.  Under the

"clearly established" inquiry, the question is whether the right was so clearly established that a

reasonable official would understand that what he or she is doing violates the law.  *Jones v.*

*Byrnes*, 585 F.3d at 975.  "The essential inquiry is whether the defendant had fair warning that

his [or her] actions were unconstitutional."  *Hensley v. Gassman,* 693 F.3d 681, 693-94 (6th Cir.

2012).  This inquiry must be undertaken in the consideration of the specific context of the case,

not as a broad proposition. *Jones,* 585 F.3d at 975.

Moreover, this inquiry is "assessed in light of the legal rules that were 'clearly

established' at the time" of the conduct at issue.  *Messerschmidt*., 132 S.Ct. 1235, 1245.

Accordingly, the Court must consider the state of the law on June 9, 2013, when the incident

occurred.  Accordingly, even if Defendant's conduct violated Plaintiff's rights, Plaintiff has to

show that the rights Defendant violated were clearly established at the time of alleged

misconduct such that a reasonable officer could not have believed that his conduct was lawful.

In order to make such a showing, Plaintiff needs to direct the Court to a Sixth Circuit or

Supreme Court case wherein the legal and factual scenario here was presented and found to have

resulted in a constitutional violation. *Bray, supra.* In other words, there must have been a case wherein a supervisor was found to have been deliberately indifferent to a correctional officer's rights by failing to follow operating procedures like those alleged here. Plaintiff has identified no such case. Rather, Plaintiff directs the Court to cases involving private citizens – not employees of a correctional facility – which involve entirely different legal and factual scenarios.

Accordingly, the Court concludes that Defendant is entitled to qualified immunity and Count I shall be dismissed.

**II.  This Court Declines To Exercise Supplemental Jurisdiction Over Plaintiff's Remaining State-Law Claims.**

Plaintiff filed this action in state court. The action was removed to this Court based on federal-question jurisdiction over the § 1983 claim. Given that this Court is dismissing the only federal claim in this action at an early stage of the litigation, the Court must consider whether it should exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.

The Sixth Circuit has held that "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citing *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966)). In *Moon*, the Sixth Circuit ruled that the trial court erred in exercising supplemental jurisdiction over the plaintiff's intentional infliction of emotional distress claim, noting that the state of Michigan law as to that claim is not well settled and that the case before it was "clearly the ordinary case, where the exercise of pendent jurisdiction is improper." *Id*. The Sixth Circuit reversed the trial court's dismissal of the intentional infliction of emotional distress

13

claim and remanded with instructions for the district court to dismiss that claim without

prejudice.

The Court finds that this is "an ordinary case" wherein the exercise of supplemental

jurisdiction after the dismissal of the federal claims would not be appropriate.  This case is at a

very early stage of the litigation in that the pending motion was filed as the first responsive

pleading and discovery has not yet even commenced.  Moreover, like the situation in *Moon,* the

remaining state-law claims include the claim of intentional infliction of emotional distress.  The

Court shall decline to exercise supplemental jurisdiction over the remaining state-law claims and

shall remand those claims to the state court, without ruling on the challenges to those claims.

*Moon, supra; see also Sussman v. Dalton*, __ F. App'x. __, 2014 WL 185382 (6th Cir. Jan. 16,

2014) (reversing ruling on qualified immunity and suggesting that upon remand the district court

decline to exercise supplemental jurisdiction over state-law claims given the dismissal of the §

1983 claims).

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion for Summary

Judgment is GRANTED IN PART. The motion is GRANTED to the extent that the Court

DISMISSES Count I because Defendant is entitled to qualified immunity.

IT IS FURTHER ORDERED that the Court DECLINES TO EXERCISE

SUPPLEMENTAL JURISDICTION over Plaintiff's remaining state-law claims and hereby

REMANDS those claims (Counts II and III of Plaintiff's Complaint) to Lenawee County Circuit

Court.

                                                  S/Sean F. Cox

                                                  Sean F. Cox

                                                  United States District Judge

Dated:  June 27, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 27, 2014, by electronic and/or ordinary mail.

                                                  S/Jennifer McCoy

                                                  Case Manager